UNITED STATES v. 3 7/12 DOZEN PACKAGES OF NU–CHARME PERFECTED BROW TINT.

SAME v. 26 CARTONS OF NU–CHARME PERFECTED BROW TINT.

Nos. 1029, 1105.

District Court, W. D. Louisiana, Shreveport Division.

March 17, 1945.

M. E. Lafargue and A. E. Bryson, both of Shreveport, La., for plaintiff.

H. V. Booth and C. B. Emery, both of Shreveport, La., and P. G. Alston, of Texarkana, Ark., for defendant.

DAWKINS, District Judge.

These two cases involve the same issues (and will be disposed of in one opinion), in which the Government seeks to condemn and have destroyed certain quantities of the product known as "Nu-Charme Perfected Brow Tint * * *, found on analysis to consist essentially of para-phenylenediamine, approximately four per cent, dissolved in water * * * and that the article is adulterated within the meaning of 21 U.S.C.A. § 361(a), in that it contains a poisonous and deleterious substance, namely, para-phenylendiamine, which may render it injurious under the conditions prescribed in the labelling thereof, as follows:

"* * * Use Glass, China or Wooden Dish for Mixing Fifteen (15) drops Solution No. 1 with Fifteen (15) drops Solution No. 2; to this add enough Powder No. 3 to make thick paste. Be sure paste will not run.

"Application

"Using small clean orange stick apply dye mixture to lashes * * * then to brows. Leave mixture on until dry * * * 10 to 15 minutes.

    \*     \*     \*     \*     \*

"Do Not Let Patron Open Eyes Until All of Mixture Has Been Removed. * * *"

The seizure was made and appropriate proceedings taken for the condemnation as having been sold in interstate commerce. Thereupon, James B. Bird, doing business as Nu-Charme Laboratories, intervened and claimed ownership of the seized product. Among other things he admitted that it was a cosmetic within the intent and meaning of the Act of June 25, 1938, known as the "Pure Food, Drug, and Cosmetic Act"; but denied that it was adulterated within the meaning of 21 U.S.C.A. § 361(a) or that it contained poisonous and deleterious substances, which render it injurious to users under conditions of use prescribed in the label thereof. Claimant then quoted in detail the directions for preparation and use which he alleged accompanied the product.

On January 16, 1945, plaintiff filed an amended libel in which it was alleged as follows:

"That the article heretofore herein seized is further adulterated within the meaning of 21 U.S.C. 361(e) [21 U.S.C.A. § 361(e)], in that it is not a hair dye and bears and contains a coal tar color that has not been listed for use in cosmetics in accordance with regulations of the Administrator of the Federal Security Agency pursuant to 21 U.S.C. 364 [21 U.S.C.A. § 364], and is other than one from a batch that has been certified."

On February 19, 1945, the following proceedings were also filed:

(1) A second amendment to the libel, from which the following is quoted:

"Notwithstanding, in order to have the pertinent regulations before the Court, libelant shows that the Federal Register of Tuesday, May 9, 1939, Volume 4, Number 89, beginning on page 1922, contains the following:

"Rules, Regulations, Orders
"Title 21—Food and Drugs
"Food and Drug Administration

"In the matter of public hearing for purpose of receiving evidence upon basis of which regulations may be promulgated for listing of coal-tar colors which are harmless and suitable for use in foods, drugs, and cosmetics, drugs and cosmetics, and externally applied drugs and cosmetics: For certification of batches of such colors: For procedures thereunder: And for payment of fees therefor.

"Order of the Secretary promulgating regulations effective on publication

"Pursuant to, and under and by virtue of, the authority and direction of the Federal Food, Drugs, and Cosmetic Act (Sec. 701, 52 Stat. 1055; 21 U.S.C. 371(e) [21 U.S.C.A. § 371(e)]; Sec. 406(b), 52 Stat. 1049; 21 U.S.C. 346(b) [21 U.S.C.A. § 346 (b)]; Sec. 504, 52 Stat. 1052; 21 U.S.C. 354 [21 U.S.C.A. § 354]; Sec. 604, 52 Stat. 1055; 21 U.S.C. 364 [21 U.S.C.A. § 364]; Sec. 706, 52 Stat. 1058; 21 U.S.C. 376 [21 U.S.C.A. § 376]), and based upon

substantial evidence of record at the hearing in the above-entitled matter, detailed findings of fact are made, as follows:

Findings of Fact

"Coal-tar colors—Derivation—scope of term.

"That coal-tar colors are materials consisting of one or more substances which either are made from coal-tar, or are capable of derivation from intermediates of the same identity as coal-tar intermediates. They include all substances from these sources which are themselves colored and impart their color to the substance to which they are applied, and they also include those compounds which do not themselves possess the color imparted to the substance to which they are applied but which, when applied to such substance, impart color. (For example: Orange I is prepared from coal-tar intermediates. It is itself colored and imparts color when applied to a substance. Alizarin may be made either from coal-tar intermediates or from the root of the madder plant. It is colored and imparts color and is considered a coal-tar color whether derived from coal-tar or from a natural source. Paraphenylenediamine is colorless but is considered a coal-tar color, since it is derived from coal-tar and imparts color when applied to other substances.) Coal-tar colors may also include diluents or substrata. In the manufacture of coal-tar colors all impurities are not completely eliminated.

"2. Definitions of terms used in regulations. (Unnecessary here) * * *

"3. No coal-tar color in the orbital area.

"That coal-tar colors are not harmless for use in preparations applied to the area of the eye, which means the area bounded by the supra-orbital ridge and the infra-orbital ridge, including the eyebrow, the skin below the eyebrow, the eyelids, the eyelashes, the conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge. The application of coal-tar colors to this area may cause serious injury and even loss of sight. No coal-tar color should be certified for use in a product to be applied to the area of the eye. A coal-tar color used in a product to be applied to this area should be considered to be from a batch that has not been certified, even though such color is from a batch that has been certified for other use."

(2) A plea by the intervenor, attacking the constitutionality of Sec. 604 of the Act of June 25, 1938, Ch. 675, 52 Stat. 1055, 21 U.S.C.A. § 364, if the court "should hold" that the Federal Security Administrator has the right and authority to promulgate regulations prohibiting the manufacture "of cosmetics containing coal tar color irrespective of the actual fact that such product is harmless when applied according to directions" as violating the 5th and 14th amendments to the Constitution of the United States;

(3) A motion to dismiss the amended libels for reasons set forth at length in paragraphs (a) to (f) included, which stated in substance, are as follows: (a) The Act of Congress excludes from its provisions eyelash dyes or eyebrow dyes; (b) alternatively, should the court hold that the administrator was given such authority by the Act, the amended bills "propose a new issue contradictory and inconsistent with the allegations of the original bill because the regulation * * * provides the certification of any 'batches' containing coal tar * * *"; (c) that the refusal of the administrator to certify any coal tar color, harmless or otherwise, is arbitrary and capricious, and confiscatory * * *"; (d) said regulation "contravenes paragraph (A) of 21 U.S.C.A. § 361 in that it defines 'a poisonous or deleterious substance' to be other than the definition contained in paragraph A"; (e) that said regulations "set up a different standard of determining the use of cosmetics, particularly eyelash and eyebrow tints * * * and redefines what is 'a poisonous and deleterious substance'"; and (f) that the administrator failed to give proper notice of hearing before prescribing such regulations as required by 21 U.S.C. A. § 371(e), and finally that intervenor had no notice of such hearing at all until the libels were filed.

On the same day, February 19th, intervenor filed answers to both amended libels.

Counsel for the Government, likewise on that day, filed what is styled "a motion for judgment on the pleadings" in which it was set forth that intervenor had answered the original libel admitting "the substantial allegations (of the libel) with exception that he denied the cosmetic contains a poisonous and deleterious substance, which may render it injurious to users under conditions prescribed on the label thereof"; that the Government then

filed an amended libel, charging that the product "was not hair dye, but an eyelash and brow dye and it contained a coal tar color that has not been listed for use as a cosmetic * * * pursuant to 21 U.S.C.A. § 364, and is other than one from a batch that has been certified"; that the original answer admitted these allegations to the amended libel; and that the government filed a second amendment setting forth the rules and regulations as shown by the Federal Register "condemning a coal tar color to be used in a product to be applied in the area of the eye", which was likewise admitted by intervenor in his answer to said amendment, and this removes any dispute as to the facts, except as to the poisonous nature of the product, which was immaterial for the purpose of said motion for judgment. Counsel for intervenor stated that if the court allowed the amendment and held that the administrator could legally refuse to certify any coal tar product for use in coloring of eyelashes and eyebrows, then there would be no question but that the government would be entitled to judgment. On the other hand, if it were concluded that the administrator did not have such authority or that intervenor had not been properly notified and given a chance to be heard at a hearing upon the matter before this ruling was made, then the matter should go to trial on the merits of whether the product, when used according to directions, was dangerous and injurious to the skin and eyes.

When this Act of June 25, 1938, was under consideration by Congress, there was considerable discussion as to whether the powers to be exercised by the administrator should be subject to review by the courts, and the lawmakers went further in the matter of judicial review of his actions than had been provided in many other instances of delegation of power to make regulations having the effect of law. These provisions for review by the courts are found in 21 U.S.C.A. § 371. Subsection (d) of § 371 provides:

"The definitions and standards of identity promulgated in accordance with the provisions of this chapter shall be effective * * *, notwithstanding such definitions and standards as may be contained in other laws of the United States and regulations promulgated thereunder."

Subsection (e) dealing with hearing and making of regulations is as follows:

"The Administrator, *on his own initiative or upon an application of any interested industry* or substantial portion thereof *stating reasonable grounds therefor, shall* hold a public hearing upon a proposal to *issue, amend,* or *repeal* any regulation contemplated by any of the following sections of this chapter: 341, 343(j), 344(a), 346(a) and (b), 351(b), 352(d), 352(h), 354, and *364.* The Administrator shall give appropriate notice of the hearing, and the notice shall set forth the proposal in general terms and specify the time and place for a public hearing to be held thereon not less than thirty days after the date of the notice, except that the public hearing on regulations under section 344(a) may be held within a reasonable time, to be fixed by the Administrator, after notice thereof. At the hearing any interested person may be heard in person or by his representative. As soon as practicable after completion of the hearing, the Administrator shall by order make public his action in issuing, amending, or repealing the regulation or determining not to take such action. The Administrator shall base his order *only on substantial evidence of record* at the hearing and shall set forth as part of the order detailed findings of fact on which the order is based. No such order shall take effect prior to the ninetieth day after it is issued, except that if the Administrator finds that emergency conditions exist necessitating an earlier effective date, then the Administrator shall specify in the order his findings as to such conditions and the order shall take effect at such earlier date as the Administrator shall specify therein to meet the emergency." [Emphasis by the writer.]

It will be noted that under subsection (e) the administrator may "on his own initiative or upon application of any interested *industry* or *substantial portion thereof* * * * *shall* hold a public hearing upon a proposal to *issue, amend,* or *repeal* any regulation contemplated by any of the following sections * * * 364"; that he shall give appropriate notice, etc., and that no such order shall take effect until ninety days after its issue. The dates on which the orders or regulations were issued in this matter appeared in the quotation from the amended bill of the government above. But the portions so quoted, as appearing in the Federal Register of May 9, 1939, do not show how or when the notice of the hearing was given or on

what date it was held. (This court does not have the 4th volume of the Federal Register, the latest number furnished it being Vol. 3, published in 1938.) However, subsection (g) provides that "a certified copy of the transcript of the record and proceedings under subsection (e) shall be furnished by the Administrator to any interested party at his request, and payment of the costs thereof, and shall be admissible in any criminal, libel for condemnation, exclusion of imports, or other proceedings arising under or in respect to this chapter, irrespective of whether proceedings with respect to the order have previously been instituted or become final under subsection (f)". This coupled with paragraph 6 of the last mentioned subsection (f) providing: "The remedies provided for in this subsection shall be in addition and not in substitution for any other remedies provided by law", would indicate that Congress had in mind that there might arise in condemnation proceedings issues upon which proceedings before the administrator affecting the rights of the claimant under any particular libel would be such that the courts should consider and decide them, notwithstanding the remedies for review provided in subsection (f), permitting the going direct to the Circuit Court of Appeals having jurisdiction in the locality "where any person who may be adversely affected by such order resides * * * or has his place of business" instead of resorting to an original action in a court of first instance, such as the United States District Courts. In Federal Security Adm'r v. Quaker Oats Co., 318 U.S. 218, on page 227, 63 S.Ct. 589, on page 595, 87 L.Ed. 724, the Supreme Court, with Chief Justice Stone as its organ, in referring to the procedure provided in subsection (f), states:

"The review provisions were patterned after those by which Congress has provided for the review of 'quasi-judicial' orders of the Federal Trade Commission and other agencies, which we have many times had occasion to construe. Under such provisions we have repeatedly emphasized the scope that must be allowed to the discretion and informed judgment of an expert administrative body."

It becomes necessary therefore, for this court to analyze the grounds of attack upon the regulations. This is particularly true since it has, after hearing, allowed the amended libel, which, in effect, says that claimant's product was not made in compliance with the regulations, because the administrator had ruled that any and all preparations intended for use as eyelash or brow dyes containing coal tar are dangerous and therefore refused to certify any batches as harmless. Claimant admits that the administrator has excluded the use of coal tar coloring from such dyes.

Taking up these contentions, we find that they fall into two classes, thus, (1) those in which it is claimed the administrator acted beyond or without authority under the statute; and (2) the alleged unconstitutionality based upon want of proper notice and the action of the administrator in denying the right to use coal tar in claimant's preparation, which amounts to taking of his property without due process of law. As pointed out earlier herein, those in the first class are raised principally in the motion to dismiss the amended libels, while in the plea of unconstitutionality it is substantially alleged that if the court should hold that the administrator, under the Act, has the right and authority to promulgate regulations prohibiting the use of cosmetics containing coal tar color irrespective of the actual fact that such product is harmless when applied according to directions, then the statute is unconstitutional and conflicts with the 5th and 14th Amendments; and further, "in the alternative", that 21 U.S.C.A. § 371, violates the 14th amendment in that it fails to provide "effective notice to those who may be vitally concerned by such contemplated orders, regulations, etc."

I think it must be conceded that Congress, in providing for review of orders and regulations made by the administrator, in the manner and by the particular procedure and courts specified in subsection (f) of § 371, must have felt that this would afford adequate remedy for determining the power, authority and correctness of the administrator's action within the statute; and that to provide stability, a reasonable limit, in the matter of time, should be fixed for those contests, which it set at ninety days. (This is not to say that the issue of sufficient notice, such as to provide due process, could not be raised also in such proceedings and reviewed in what the Supreme Court in Federal Security Adm'r v. Quaker Oats Co., supra,

termed "respondent's appeal from this order" to the Court of Appeals.)

■ Besides, in the first sentence of subsection (e) of § 371, the "Administrator, on his own initiative or upon an application of any interested industry or substantial portion thereof * * *, *shall* hold a public hearing upon a proposal" not only *"to issue"* but to *"amend,* or *repeal* any regulation contemplated by any" section of the act, including § 364 of 21 U.S.C.A., requiring that he "shall promulgate regulations providing for the listing of coal-tar colors which are harmless and suitable for use in cosmetics and for the certification of batches of such colors, with or without harmless dilutents." In other words, regardless of the nature of the regulation and of the fact that it might have been adopted with full compliance as to notice, hearing, review, etc., it would seem "that any industry or substantial portion thereof" could make application "to amend or repeal" the same. Of course, what should constitute an "industry or substantial portion thereof" is somewhat indefinite and uncertain, but the act itself does seem to provide a means for raising these issues, first before the administrator, and then, by direct appeal to the court of appeals, thus insuring a more speedy determination than if submitted to the courts of original jurisdiction, such as the present proceeding. Hence, except as to the constitutional issues of due process under the 5th and 14th amendments, raised by the charge of insufficient provision for notice and opportunity to this claimant to be heard before adoption of the regulations quoted above from the second amended bill and the wrongful taking of his property, it does not appear to this court that there is any other remedy "provided by law", and none has been cited or referred to by complainant, by which this court can review the action of the administrator complained of in either the motion to dismiss or otherwise, which existed prior to the enactment of section 371(f), and as to which the latter would be "in addition".

■ Before this court can determine whether the notice and hearing held were sufficient to constitute due process, it will be necessary to have before it a certified copy of the proceedings had before the administrator, as provided by subsection (e) of § 371, which can be obtained by

claimant for use herein, under subsection (g).

The motion to dismiss will therefore be denied, but the matter is held open upon the issues of the constitutional questions to afford the parties an opportunity to obtain and file in this case certified copies of the proceedings had before the administrator, showing specifically the time and manner of giving notice to the claimant and others in said industry, as well as the character of the hearing.