UNITED STATES v. 3 7/12 DOZEN PACKAGES OF NU–CHARME PERFECTED BROW TINT.

SAME v. 26 CARTONS OF NU–CHARME PERFECTED BROW TINT.

Civil Actions Nos. 1029, 1105.

District Court, W. D. Louisiana, Shreveport Division.

Aug. 7, 1945.

See also 61 F.Supp. 850.

M. E. Lafargue, U. S. Atty., and A. E. Bryson, both of Shreveport, La., for plaintiff.

H. V. Booth and C. B. Emery, both of Shreveport, and P. G. Alston, of Texarkana, Ark., for defendants.

DAWKINS, District Judge.

In the opinion handed down in these consolidated cases on March 16, 1945, D.C., 59 F.Supp. 284, 289, it was said:

"The motion to dismiss will therefore be denied, but the matter is held open upon the issues of the constitutional questions to afford the parties an opportunity to obtain and file in this case certified copies of the proceedings had before the administrator, showing specifically the time and manner of giving notice to the claimant and others in said industry, as well as the character of the hearing."

This ruling was made upon motion of the claimant or intervenor to dismiss the libel, and as indicated therein, the Court considered the only serious issue to be the constitutional one as to whether a reasonable opportunity to be heard had been afforded the intervenor and others in its position before the regulation prohibiting the use of coal tar in the manufacture of eyelash and brow tints was adopted.

In compliance with the suggestion or requirement contained in the concluding paragraph of the opinion quoted above, counsel for the government obtained and filed in the record the following:

(1) A press release under date of January 6, 1939, of a hearing to be had on February 6, 1939, in one of the buildings occupied by the Secretary of Agriculture in Washington, D. C., at which all persons using or proposing to use coal tar or its products in the manufacture of commodities for sale to the public, would be given an opportunity to be heard, either in person or through representative.

(2) Three copies of the Federal Register of dates January 7, April 8 and May 9, respectively.

(1) The press release stated that at the proposed hearing there would be considered "some one hundred and thirty-two coal tar colors on which interested persons may submit testimony concerning harmlessness and suitability for use." It also stated that, "It is not proposed to certify any color for use in eyelash or eyebrow dyes."

Presumably this release was published in the various trade journals of the many businesses or industries using coal tar colors.

(2) The Federal Register of January 7, 1939, among other things dealing with coal tar colors, etc., contained the following:

"Notice of public hearings for the purpose of receiving evidence upon the basis of which regulations may be promulgated providing for the listing of coal-tar colors which are harmless and suitable for use in foods, drugs, and cosmetics, drugs and cosmetics, and externally applied drugs and cosmetics; for the certification of batches of such colors; for procedures thereunder; and for the payment of fees therefor."

"(o) The authorization contained in these regulations for the certification of coal-tar colors for use in food, drugs, and cosmetics, or in drugs and cosmetics, or in externally applied drugs and cosmetics, shall not be considered to authorize the certification of any coal-tar color for use in an eyelash dye or an eyebrow dye. A coal-tar color so used shall be considered to be from a batch that has not been certified in accordance with these regulations, even though such color is from a batch that has been certified for other use."

The issue of April 8, 1939 contained the following:

"Department of Agriculture.
"Food and Drug Administration.

"In the matter of public hearing for purpose of receiving evidence upon basis of which regulations may be promulgated providing for listing of coal-tar colors which are harmless and suitable for use in foods, drugs, and cosmetics, drugs and cosmetics, and externally applied drugs and cosmetics; for certification of batches of such colors; for procedures thereunder; and for payment of fees therefor."

"No direct, positive testimony was introduced by other interested persons to controvert, or tending to controvert, the testimony introduced by the Department to the effect that the application of any coal-tar color to the orbital area is liable to cause serious consequences, even resulting in impairment or loss of sight, and that no coal-tar color should be considered for listing for use in that area."

"No coal-tar color in the orbital area. That coal-tar colors are not harmless for use in preparations applied to the eye. The

anatomical structure of the eye includes the area bounded by the supra-orbital ridge and the infra-orbital ridge, including the eyebrow, the skin below the eyebrow, the eyelids, the eyelashes, the conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge. The application of coal-tar colors to this area may cause serious injury and even loss of sight. A coal-tar color which is certified for use in food, drugs, and cosmetics, or in drugs and cosmetics, or in externally applied drugs and cosmetics, should not be certified for use in a product to be applied to the eye. A coal-tar color used in a product to be applied to the eye should be considered to be from a batch that has not been certified, even though such color is from a batch that has been certified for other use. (R., pp. 32, 33. 78, 234–37, 413, 437, 438, 498, 599, 433; Government's Exhibit No. 1.)"

The issue of May 9, 1939, contained the following, among others, on the subject of use of coal tar for colors:

"Rules, Regulations, Orders
"Title 21–Food and Drugs

"Food and Drug Administration

"In the matter of public hearing for purpose of receiving evidence upon basis of which regulations may be promulgated for listing of coal-tar colors which are harmless and suitable for use in foods, drugs and cosmetics, drugs and cosmetics, and externally applied drugs and cosmetics; for certification of batches of such colors; for procedures thereunder; and for payment of fees therefor

"Order of the secretary promulgating regulations effective on publication

"Pursuant to, and under and by virtue of, the authority and direction of the Federal Food, Drugs, and Cosmetic Act (Sec. 701, 52 Stat. 1055, 21 U.S.C. 371(e) [21 U.S.C.A. § 371(e)]; Sec. 406(b), 52 Stat. 1049, 21 U.S.C. 346(b) [21 U.S.C.A. § 346(b)]; Sec. 504, 52 Stat. 1052, 21 U.S.C. 354 [21 U.S. C.A. § 354]; Sec. 706, 52 Stat. 1058, 21 U.S.C. 376 [21 U.S.C.A. § 376]), and based upon substantial evidence of record at the hearing in the above entitled matter, detailed findings of fact are made, as follows:

\*        \*        \*        \*        \*

"No coal-tar color in the orbital area. That coal-tar colors are not harmless for use in preparations applied to the area of the eye, which means the area bounded by the supra-orbital ridge and the infra-orbital ridge, including the eyebrow, the skin below the eyebrow, the eyelids, the eyelashes, the conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge. The application of coal-tar colors to this area may cause serious injury and even loss of sight. No coal-tar color should be certified for use in a product to be applied to the area of the eye. A coal-tar color used in a product to be applied to this area should be considered to be from a batch that has not been certified, even though such color is from a batch that has been certified for other use."

From this showing it is evident that the claimant and all other interested persons were given all the notice possible, in view of the very large numbers of persons and industries involved. It further appears that all of those who filed appearances either in "person or through representative," were given ten days in which to file briefs or arguments upon any point involved; and that such exceptions as were filed were duly considered, some sustained and others rejected. None appeared to have been made to the regulation providing that no batches of dye would be certified for use in eyelash or eyebrow tint.

On April 19, 1945, a further hearing was had by the court in this case, at which these exhibits were filed. Subsequently, in the month of July, the exact date does not appear in the minutes, counsel for claimant brought the matter to the attention of the court, and advised that he did not intend to file further briefs, as had been suggested at the time of the hearing, and requested that the case be disposed of as it stood.

Without finding it necessary to go further into the facts or law thus presented, it is sufficient to say that, in my opinion, there was due process and a compliance with the statute and that the plea of unconstitutionality of intervenor must fail.

The motion to dismiss will therefore be overruled.